UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
SONNI A. CRUZ,

                               Plaintiff,

                 -against-

CHRISTOPHER SHANAHAN, in his official
capacity as New York Field Office Director for
U.S. Immigration and Customs Enforcement; JEH
JOHNSON, in his official capacity as Secretary of
Homeland Security; ERIC HOLDER, in his official
capacity as the Attorney General of the United
States; and the U.S. DEPARTMENT OF
HOMELAND SECURITY,

                              Defendants.
-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/30/2015

14-CV-9736 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

      Petitioner Sonni Cruz has been detained by U.S. Immigrations and Customs Enforcement ("ICE") since October 9, 2014, pending ICE's determination whether he will be removed from the United States. After ICE denied Cruz's request for an individualized bond hearing to determine whether he should be released during the pendency of the removal proceedings, he petitioned this Court for a writ of habeas corpus, 28 U.S.C. § 2255, requesting an individualized bond hearing. For the reasons set forth below, Cruz's petition is GRANTED.

**I.    BACKGROUND**

      Cruz is a native and citizen of the Dominican Republic who entered the United States in 1997 and became a lawful permanent resident in November 2001. Resp't Mem. at 2. In 2005, Cruz was arrested and, on December 8, 2009, pled guilty to conspiracy to distribute cocaine in

violation of 21 U.S.C. § 846[1] in the U.S. District Court for the Southern District of New York; he was sentenced to time served plus five years of supervised release. Resp't Ex. B at 1-2. Cruz was arrested on September 30, 2014, before the expiration of his supervised release, and, on October 9, 2014, was transferred to ICE custody. Pet. ¶ 18.[2] The day of his transfer, an ICE officer determined that Cruz would be detained without a bond hearing during the pendency of removal proceedings pursuant to section 1226 of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1226. Resp't Ex. E. An Immigration Judge reviewed Cruz's request for a change in custody status and, on December 10, 2014, denied that request because, he said, section 1226(c) mandated detention pending removal. Resp't Ex. F.

Cruz petitioned for a writ of habeas corpus and argues that he is entitled to an individualized bond hearing pursuant to section 1226(a) to determine whether he should be released pending a removal determination. Pet. ¶¶ 7, 52 (Dkt. 4); *see* 8 U.S.C. § 1226(a).[3] Section 1226(a) grants the Attorney General discretion to release an alien on bond or conditioned parole pending a decision whether the alien is to be removed from the United States, "except as provided in" section 1226(c). 8 U.S.C. § 1226(a). Cruz argues that section 1226(c) does not apply to him because he was taken into custody well after he was released from custody – not "when . . . released" from criminal confinement, as provided in section 1226(c). Pet. ¶ 5. Cruz

---

[1] A conviction for a violation of 21 U.S.C. § 846 is grounds for removal. 8 U.S.C. § 1227 (a)(2)(B)(i) (an alien who "has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country related to a controlled substance . . . is deportable.").

[2] On October 9, 2014, ICE placed Cruz in removal proceedings by serving him with a Notice to Appear, the charging document that commences removal proceedings. Resp't Mem. at 2. The Notice to Appear was signed on January 9, 2014, but stated that the date and time for the removal proceeding remained "to be set" by the Immigration Court. Resp't Ex. D at 1. No reason was provided for the nine-month delay in serving Cruz with the Notice to Appear. Cruz cannot have been hard to find considering that the terms of his supervised release required that he keep his probation officer apprised of his residence address and the address of his employer, and required monthly check-ins with his probation officer. *See* Resp't Ex. B at 3.

[3] Cruz's removal hearing has been scheduled for February 25, 2015. Resp't Ex. G.

also argues that his detention without a bond hearing violates his Fifth Amendment right to Due Process. Pet. ¶¶ 6, 39-42.

## II.   SUBJECT MATTER JURISDICTION

The INA deprives federal courts of jurisdiction to review the "Attorney General's discretionary judgment" with regard to "detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). Although Respondents do not challenge the Court's jurisdiction to review the Immigration Judge's rejection of Petitioner's request for a bond hearing, the Court is obligated to consider subject matter jurisdiction *sua sponte*. *See Florida v. Thomas*, 532 U.S. 774, 777 (2001). In *Demore v. Kim*, 538 U.S. 510, 517 (2003), the Supreme Court held that section 1226(e) does not bar habeas review of a challenge to the "statutory framework that permits detention without bail" found in 8 U.S.C. § 1226(c). The Court therefore proceeds to the merits of the petition.

## III.   STATUTORY FRAMEWORK

The mandatory detention provision of section 1226(c) is part of a section of the INA that governs the arrest and detention of aliens who are subject to removal from the United States. *See generally* 8 U.S.C. § 1226. Whether Cruz is subject to mandatory detention or entitled to a bond hearing turns on the interplay between sections 1226(a) and 1226(c). The general rule under section 1226(a) is that aliens arrested and charged with removal may be released on bond or conditional parole during the pendency of removal proceedings:

(a) Arrest, detention, and release

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. *Except as provided in subsection (c) of this section and pending such decision*, the Attorney General—
>
>     **(1)** may continue to detain the arrested alien; and

>> **(2)** *may release* the alien on—
>
>> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
>> **(B)** conditional parole . . . .

8 U.S.C. § 1226(a) (emphasis added). Thus, in most cases, the Attorney General has discretion to determine whether an arrested alien should be detained or released on bond or conditional parole.[4] That discretion is limited, however, "as provided in subsection (c)." Subsection (c) provides:

> (c) Detention of criminal aliens
>
>> (1) Custody
>>
>> The Attorney General *shall take into custody any alien who*—
>>
>>> **(A)** is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>>>
>>> **(B)** is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>>>
>>> **(C)** is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [sic] to a term of imprisonment of at least 1 year, or
>>>
>>> **(D)** is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>>
>> *when the alien is released*, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
>> (2) Release
>>
>> The Attorney General *may release an alien described in paragraph (1) only if* the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a

---

[4] A broad grant of discretion is a common feature of the INA. *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 444 (1987) (The vesting of discretion in the Attorney General is quite typical in the immigration area [citation]. If anything is anomalous, it is that the Government now asks us to restrict its discretion to a narrow class of aliens.").

> potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. . . .

8 U.S.C. § 1226(c) (emphasis added). The issue in this case, and the many other cases like it, is whether section 1226(c)(2) (the so-called "mandatory detention provision")[5] applies to an alien who, like Cruz, is deportable for one of the reasons stated in sections (c)(1)(B) or (C) but was not taken in to the Attorney General's custody until years after his release from criminal custody.

Cruz argues that the Immigration Judge's application of section 1226(c) in his case – which the government argues is governed by the Board of Immigration Appeals' ("BIA") decision in *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001) – was erroneous. According to Cruz, the so-called mandatory detention provision applies to criminal aliens whom the Attorney General takes in to custody on or about the time they are released from criminal custody and it does not apply to aliens who have been at liberty for years before the Attorney General arrests in order to remove them. Pet. ¶¶ 25, 26. Respondents' position – based on *Matter of Rojas* – is that the mandatory detention provision in section 1226(c)(2) applies to any alien who was convicted of an offense enumerated in section 1226(c)(1) regardless of when the alien's removal proceedings commence and regardless of when the alien is taken into ICE custody. The Court agrees with Cruz.

---

[5] Although the government refers to this provision as a "mandatory detention" provision, it is more accurate to describe it as an exception to the general discretionary authority immigration officials have over the release or detention of criminal aliens under section 1226(a). As Cruz argues, section 1226(c) is not a standalone provision; it is part of section 1226's broader scheme that grants the Attorney General discretion to determine whether to detain or release aliens during removal proceedings. Pet'n Reply Mem. at 5.

**IV.     *MATTER OF ROJAS***

In *Matter of Rojas*, the BIA interpreted section 1226(c) in the context of a challenge to mandatory detention by an alien who was taken into ICE custody two days after his release from state custody.  23 I. & N. Dec. 117 at *2.  Rojas was subject to removal under section 1226(c)(1)(B) as an alien who had been convicted of an aggravated felony (section 1227(a)(2)(A)(iii)) and as an alien who had been convicted of a controlled substance violation (1227(a)(2)(B)(i)).  *Id.* at *1.  The INS took Rojas in to custody the second day after his release from state custody on parole pursuant to a Notice to Appear that had been served four months prior to his release.  *Id.*  Rojas argued that he was not subject to mandatory detention under section 1226(c) "because he was not taken into custody 'when . . . released' from incarceration, but rather was free in the community before being detained by the Service."  *Id.*

The BIA concluded that a criminal alien who is released from criminal custody is subject to mandatory detention pursuant to section 1226(c), "even if the alien is not immediately taken into custody by the Immigration and Naturalization Service when released from incarceration." *Id*.  In its analysis, the BIA first determined that "the literal language of section 236(c)(2) of the Act, [8 U.S.C. § 1226(c),] which provides for the detention of 'an alien described in paragraph (1),' does not unambiguously tell us whether it encompasses the 'when the alien is released' clause in section 236(c)(1) or merely references the four categories of aliens described in subparagraphs (A) through (D)." *Id.* at *4.  The BIA then interpreted "when . . . released" as describing "the command that the 'Attorney General shall take in to custody'" and "specif[ying] the point in time at which that duty arises," but found that "an alien described in paragraph (1)" referenced all aliens that fell under subparagraphs (A) through (D), *without* limitation by the "when . . . released" clause.  *Id.* at *4.  According to the BIA's interpretation, the mandatory detention provision "cover[s] criminal aliens regardless of when they were released from

criminal confinement and regardless of whether they had been living within the community for years after their release." *Id.* at *5.  This conclusion was based, in part, on the BIA's understanding of Congress's motivations in passing the statute:

> Congress was frustrated with the ability of aliens, and particularly criminal aliens, to avoid deportation if they were not actually in [INS] custody when their proceedings were completed . . . .  The statute does direct the Attorney General to take custody of aliens immediately upon their release from criminal confinement.  But Congress was not simply concerned with detaining and removing aliens coming directly out of criminal custody; it was concerned with detaining and removing *all* criminal aliens.

*Id.* at *5.  *Matter of Rojas* concluded: "We construe the phrasing 'an alien described in paragraph (1),' as including only those aliens described in subparagraphs (A) through (D) of section 236(c)(1) of the Act, and as not including the 'when released' clause." *Id.* at *8.  Under this interpretation, an Immigration Judge has no jurisdiction to hold a bond hearing to determine whether to release an alien who was convicted for any of the offenses listed in section 1226(c), regardless of when the alien went in to ICE custody.  *Id.* at *10.

## V.   *CHEVRON* DEFERENCE TO *MATTER OF ROJAS*

The government argues that *Matter of Rojas* is entitled to "substantial deference" under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and, therefore, Cruz's petition must be denied.  The BIA's decision in *Matter of Rojas* is only entitled to *Chevron* deference if (1) the statute is ambiguous as to the precise question, and (2) *Matter of Rojas* speaks to the point at issue and is a "permissible construction" of the statute.  *Chevron*, 467 U.S. at 842-43.  The Court finds that the statute is unambiguous and therefore the holding in *Matter of Rojas* is not entitled to *Chevron* deference.

The government argues that section 1226(c) is ambiguous and therefore the Court should give the BIA's interpretation of the statute *Chevron* deference and deny Cruz's petition.  Resp't Mem. at 8-9.

7

*Chevron* provides that "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Cardoza-Fonseca*, 480 U.S. at 448 (quoting *Chevron*, 467 U.S. at 843). Thus, if the statute is unambiguous, the Court should apply the law as Congress intended, and, if an administrative interpretation conflicts with unambiguous congressional intent, that interpretation should be disregarded. *See id.* at 445-449 (rejecting the BIA's interpretation of two statutes providing different methods under which an otherwise deportable alien can seek relief based on the text and history of the statutes). If, however, Congress "has not directly addressed the precise question at issue" and "the statute is silent or ambiguous with respect to the specific issue," the Court should defer to an administrative interpretation of the issue, so long as the interpretation is "based on a permissible construction" of the statute. *Chevron*, 467 U.S. at 843.

The government argues that the statutory language is ambiguous and frames the "precise question at issue" as "whether mandatory detention applies only to aliens immediately apprehended following release from criminal custody." Resp't Mem. at 9; *see also, e.g., Hosh v. Lucero*, 680 F.3d 375, 379 (4th Cir. 2012) ("The meaning of § 1226(c) is not plain to us."); *Johnson v. Orsino*, 942 F. Supp. 2d 396, 405 (S.D.N.Y. 2013) (concluding that section 1226(c) is ambiguous). The government further argues, and other courts have held, that because *Matter of Rojas* concluded that the phrase "when . . . released" did not "describe" the aliens in paragraph (1), mandatory detention applies to all aliens convicted of an offense enumerated in section 1226(c)(1). *See, e.g.*, *Hosh*, 680 F.3d at 379 (giving deference to *Matter of Rojas* when petitioner had been released three years before he was taken in to ICE custody); *Romero v. Shanahan*, No. 14-CV-6631 (KBF), 2014 WL 6982937 (S.D.N.Y. Dec. 10, 2014); *Straker v. Jones*, 986 F. Supp. 2d 345, 352-53 (S.D.N.Y. 2013) (collecting cases).

Petitioner argues that the statutory language in section (c)(2) ("an alien described in paragraph (1)") is unambiguous on its face and that the mandatory detention only applies to the specified aliens whom the Attorney General takes in to custody immediately (or shortly after) their release from imprisonment.  Pet. ¶ 30; *accord Araujo-Cortes v. Shanahan*, --- F. Supp. 2d ---, No. 14-CV-4231 (AKH), 2014 WL 3843862, at *6-8 (S.D.N.Y. Aug. 5, 2014) (finding that (c)(2) unambiguously applies to aliens who are taken into immigration custody immediately when released from custody); *Louisaire v. Muller*, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) (finding that the mandatory statute is unambiguous and only applies to aliens who are taken into custody immediately upon their release from criminal sentences).  Petitioner similarly argues that "when the alien is released" is unambiguous and "connotes immediacy" rather than mandatory detention unbounded by temporal proximity to the alien's release.  Pet. ¶ 31; *accord Louisaire*, 758 F. Supp. 2d at 236 ("The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated . . . *immediately* upon their release from criminal sentences . . . ."); *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 182 (S.D.N.Y. 2009) (holding that "the plain language of the statute . . . manifests Congress' clear intent that there must be a nexus between the date of release and the removable offense").[6]

Applying traditional tools of statutory construction – an examination of the arrest, detention, and release scheme of section 1226 of the INA and the statute's language, context, and structure – the statute is not ambiguous.  *See Araujo-Cortes*, 2014 WL 3843862, at *5-6.  Section 1226(c) ("Detention of criminal aliens"), paragraph (1) ("Custody"), commands the Attorney General to take in to custody an alien who is deportable or excludable for one of the reasons

---

[6] There is a divide within this district over the meaning of the "when . . . released" provision.  *See Martinez-Done v. McConnell*, --- F. Supp. 3d ---, No. 14-CV-3071 (SAS), 2014 WL 5032438, at *2-3 and n.24-25 (S.D.N.Y. Oct. 8, 2014) (explaining the two approaches and listing decisions).

9

listed subparagraph (A) through (D) "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation." 8 U.S.C. § 1226(c)(1). Paragraph (2) ("Release") then limits the circumstances under which "[t]he Attorney General may release an alien described in paragraph (1)." 8 U.S.C. § 1226(c)(2). Thus, paragraph (2) applies to aliens that the Attorney General – in keeping with the statutory command – took in to custody immediately upon release from custody due to an enumerated offense. It does *not* apply to all aliens that the Attorney General *should* have but did not take in to custody immediately because such aliens are not "described in paragraph (1)."

This reading of section 1226(c) squares with the language of section 1226(a). Section 1226(a) grants the Attorney General discretion to arrest an alien and to detain or release such an alien pending a removal decision. 8 U.S.C. § 1226(a) ("the Attorney general *may* continue to detain the arrested alien; and *may* release the alien . . . ."(emphasis added)). The discretion to detain or release is subject to the exception "*as provided in* subsection (c) of this section *and pending such decision*." 8 U.S.C. § 1226(a) (emphasis added). The only "decision" provided in subsection (c) is found in (c)(2) – a decision that the alien qualifies for federal witness protection, which is the only circumstance that would permit the Attorney General to release an alien "described in paragraph (1)." *See* 8 U.S.C. § 1226(c)(2). If Congress intended mandatory detention to apply to all aliens who are inadmissible or deportable for the reasons listed in subsection (c)(1)(A)-(D) – without reference to when they were taken in to custody – the statute could easily have said so. As written, the only aliens who are not entitled to a bond hearing under section 1226(a) are those who are taken in to custody immediately after their release from custody.

VI. CONCLUSION

10

Because the Court finds that section 1226(c) is unambiguous and does not apply to aliens who, like Cruz, were not taken in to custody until years after their release, the Court need not address Cruz's Due Process argument. Cruz's petition for a writ of habeas corpus is GRANTED with the instruction that the government promptly provide him with the individualized bond hearing.

**SO ORDERED.**

Date:  January 30, 2015
       New York, New York

**VALERIE CAPRONI**
**United States District Judge**